# American Steamship Company *versus* Landreth.

1. A passenger on a steamship, after a severe storm, attempted to walk from a stateroom to the companion way, but was thrown down by a sudden lurch of the vessel and injured. At the place where she fell the side of the saloon was finished from floor to ceiling by a space of smooth panelling about twelve feet in length, along which there was no guard or railing to use for support. In an action by the passenger against the company for damages, alleging negligence on the part of the defendants in not having a guard rail at the place indicated:
   *Held*, that in view of these facts, taken in connection with the plaintiff's testimony that she could have saved herself by a rail, and the further evidence that other steamships had rails in similar places, and that this vessel was afterwards provided with one, the question of negligence on the part of the company was a proper one for submission to the jury.

2. It was also in evidence that the floor of the saloon was wet and slippery at the time of the accident, and that the sea had been running high; but plaintiff testified that the accident was occasioned solely by the sudden lurch and not by the slippery floor, and that there was a lull when she started across the saloon:
   *Held*, that the question of contributory negligence on the part of the plaintiff was properly for the jury.

3. American Steamship Company *v.* Landreth, 6 Out. 131 adhered to, and held to govern this case so far as applicable.

January 8th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. CLARK, J., absent.

ERROR to the Court of Common Pleas, No. 4, of *Philadelphia county :* Of January Term, 1884, No. 238.

Case, by Eliza G. Landreth against The American Steamship Company, to recover damages for personal injuries sustained by the plaintiff, alleged to have been caused by the negligence of the defendants in not providing a guard rail along a certain part of the saloon of the vessel.

The first trial of the cause resulted in a judgment for the plaintiff, which was reversed by the Supreme Court and a new trial ordered, on the ground that certain declarations made by the captain of the vessel, after the accident, had been improperly admitted in evidence: 6 Out., 131.

On the second trial the following facts appeared: The plaintiff was a passenger on the steamship Pennsylvania in November, 1877. On the morning of the ninth, just after a severe storm had abated and the passengers were beginning to move about the ship and go on deck, the plaintiff crossed the saloon, into which her stateroom opened, to visit a Mrs. Davids, who occupied a room on the other side. Not finding her friend, the plaintiff started toward the companion-way, intending to go up to the social hall, when the ship gave a sudden and violent lurch which threw her down and broke her wrist. During the storm water had come down into the saloon, necessitating the removal of the carpet, which left the floor wet and slippery. At the place where the accident occurred there was a smooth panel along the side of the saloon, leaving nothing to catch hold of. Upon this second trial the testimony relied on to show what took place at the time of the accident was that of the plaintiff herself, and was substantially as follows: " Wasn't there a tremendous sea running at that moment? No, sir; there was not, because how could I have quietly walked across? There was no high sea running then. As I say, there were long intervals of quiet. The lurches, when they came, were severe. . . . . . The storm had very much abated. The gale had very much abated, and the lurches were very much less frequent. It was very much quieter indeed than it had been. The ladies were on the deck, which they had not been for several days. . . . . The storm had very decidedly abated. The ladies hadn't been up stairs for several days, and this morning they were in the social hall. Did the dampness of the floor bring about this accident? Not at all. Or the slippiness of the floor? No; the floor was wet. Did you slip on the floor? No, sir; I was swayed with the lurch. I don't think the floor had anything to do with it."

" Q. Were you in a position that you could have held on to any hand-rail?

A. Certainly. I was near enough to turn and grasp this way (indicating), and my fingers glanced down against the polished wood. . . . . .

Q. Had there been rails along this polished panel which you reached for were you in a position to have caught them so as to have saved your fall?

A. Exactly. I put my hand out and touched the panels. If the rail had been there I would undoubtedly have been saved.

Q. This part of the ship where it occurred, was it a part of the ship that was much frequented or not?

A. Yes, sir; you had to pass along there all the time in going from the state-rooms to the upper deck or to every other part of the ship. . . . . .

Q. You were under the impression that you could get from the alcove to the companion-way while the ship was quiet?

A. I don't think I calculated that matter particularly. My impulse was to get upstairs, not finding Mrs. Davids, and hearing voices up there I wanted to go up too. I didn't calculate the dangers of the thing. I didn't lay out a route at all to go.

Q. You thought you could with perfect safety go from Mrs. Davids' room to the companion-way?

A. I didn't think anything about it. I walked along to get upstairs without calculating. . . . . . I was not expecting a lurch at that moment. . . . . . I was thrown back and forth. I tried to save myself. Q. Your hand struck this panel did it not? A. Yes, sir. The right hand. . . . . . I struck the panel, my finger nail was broken with the force I struck the panel. . . . . . My hand went down as far as I could reach. . . . . .

Q. You knew there was no hand-rail, didn't you?

A. Yes, sir; I suppose I did, but it had never been impressed upon me in any way.

Q. There was none there and you knew it?

A. I suppose I did know it, but it had never been impressed upon me whether there was or not.

Q. You don't think, when you were undergoing this struggling to keep your feet you were thinking of a hand-rail?

A. Why did I put out my hand that way?

Q. When you did that thing were you thinking of a hand-rail?

A. I put out my hand because I expected something to save me.

Q. You thought there was a hand-rail there?

A. No; I didn't think there was a hand-rail there.

Q. You won't have us think for a moment that there was a hand-rail in your mind when you put out your hand?

A. No; but I put out my hand to catch me."

The defendants submitted *inter alia*, the following points:

" 2. If the plaintiff, knowing that there was no hand-rail at the place complained of, voluntarily walked by it when the vessel was in violent motion, and the floor of the saloon was wet and slippery, when she might have supported herself by fixed furniture, she contributed to the accident, and cannot recover."

Answer. " Of that you are the judges, and not the court. Whether she ought to have walked there at that time—whether she ought to have walked in that direction at that time—is a question for you. If you find that she was guilty of negligence in being there, and in walking as she did in the place and manner she did, then your verdict ought to be for the defendants, because then she was guilty of contributory negligence. Whether she was guilty of that negligence in being there is not for the court, but for you."

" 3. If the state of the sea and the condition of the floor of the saloon made it unsafe or imprudent for the plaintiff to walk where she did she contributed to the accident by so doing, and cannot recover."

Answer. " That is like the other point. It raises a question of contributory negligence on the part of the plaintiff, which is for the jury and not for the court."

" 4. If the accident to the plaintiff was due to her losing her balance either on account of a lurch of the ship or by her slipping upon the wet floor, or by both, then the question whether a hand-rail would have saved her is pure speculation, and so remote in the order of causation as not to make the defendant liable."

Answer. " Well, gentlemen, that is entirely for you. It is for you to say whether the absence of the rail caused the accident; that is, caused it in the sense of not preventing it; whether the accident would have happened if the rail had been there, or whether the rail had been there or not. These, as I have told you before, are questions for you and not for me. You are to say whether you have, under the evidence, any reasonable certainty that the accident would not have happened if the rail had been there, or whether it would have happened if the rail had been there. You are to judge, in other words not only of all the facts in the case, but of the probabilities arising out of the facts, and it is no part of my province to do that."

In the general charge the court instructed the jury as follows:

" Therefore it becomes important, gentlemen, to inquire in the first place whether the accident was caused by the absence

of the rail at the point at which said accident ·took place, which seems to have been about twelve feet from the companion-way. Was that the cause of the accident? I do not mean of course, the cause in the sense that it produced the accident; for of course in that sense it could not be the cause of it; but was it the cause of the accident in the sense that if there had been a rail there the accident would not have happened: Would the accident have probably happened if the rail had been there, or if the rail had been there would it probably not have happened? These are questions for your determination and not for mine. I only advert to them as points which it is proper for you to consider in the just determination of this case. It is for you to say whether this accident would have happened if the rail had been there or whether if the rail had been there it would not have happened. Of course, if you are of the opinion that the accident would have happened if the rail had been there, the defendants are not liable for it. If the rail had been there would the plaintiff probably have been saved from the results of the accident? If you are of that opinion, then the defendants are responsible for the accident provided the absence of the rail was negligence, and provided there was no contributory negligence on the part of the plaintiff herself."

Verdict and judgment for plaintiff: whereupon the defendants took this writ assigning for error, the answers to their points as above set out; the part of the general charge quoted, and the refusal of the court to withdraw the case from the jury on the plaintiff's own testimony.

*A. Sydney Biddle* and *M. P. Henry* (with whom was *H. G. Ward*), for plaintiffs in error.—There was no evidence proper to go to the jury. It was a matter of pure opinion with the plaintiff below, (first), whether she would have caught the rail, and (second), whether she could have supported herself by it if she had. It is well settled that in negligence cases where the facts are not in dispute, it is the duty of the court to inquire whether a reasonable inference of negligence can be drawn from them by the jury; and if not, a binding instruction must be given for the defendant. A reasonable inference of defendant's negligence cannot be drawn where the plaintiff's case fails to prove appropriate facts; or where the case shows contributory negligence on the plaintiff's part: Phila. & Reading R. R. *v.* Yerger, 23 P. F. S., 121; Wharton on Neg., sec. 420; Randall *v.* B. & O. R. R. Co., 3 Sup. Ct. Rep., 325; Goshorn *v.* Smith, 11 Norris, 435; Baker *v.* Fehr, 1 Out., 70.

*John G. Johnson*, for defendant in error.—The Supreme

Court has already passed upon the questions raised by the assignments of error in this case. In the former appeal the fourth and fifth assignments were as follows:

"*Fourth.*—The learned judge erred in refusing the defendants' fifth point, which is as follows: That there is no evidence to support the charge of negligence in this case and the plaintiff is not entitled to recover."

"*Fifth.*—Because under the plaintiff's evidence she was guilty of contributory negligence, and cannot recover."

After discussing the testimony the Supreme Court on the first writ of error said: "The third, fourth and fifth assignments of error are not sustained." The only difference in defendant's evidence in this case from that offered on the first trial, is that here they did not call one R. D. Williams by whom they vainly sought on the former trial to show that the plaintiff was not walking at the time of the accident, but standing still near a radiator.

Chief Justice MERCUR delivered the opinion of the court, January 26th 1885.

This case is here for the second time. As the evidence stood on the former trial we held the case was clearly for the jury on the questions of negligence and contributory negligence. We have carefully examined the evidence given on the second trial. We have compared it with all that was given on the former trial. We are not able to discover any substantial difference.

Whether the defendant in error put out her hand to grasp a rail thinking there was one, or whether knowing there was none, she suddenly sought to grasp some other object to save herself from falling, is really unimportant. The substantial cause of complaint was the absence of any object to protect her from injury in case of a sudden lurch. As a rail is the more usual protection against danger on a ship, evidence was given for the purpose of showing had there been one at the place where she was walking, the injury would not have been sustained. There was evidence that many other ships had similar places protected by a rail, and that soon after this injury one was put in that place in this ship. As there was neither rail nor any other object in lieu thereof affording adequate protection against injury in case of a sudden, and at the time, unexpected lurch, the question of negligence in omitting to provide against what must frequently occur was for the jury. It was submitted in a clear and satisfactory charge.

Judgment affirmed.

PAXSON, J. I did not agree to the judgment when this

case was here before, and am constrained to dissent now. I think it is carrying the doctrine of negligence to an unreasonable extent. There are too many " ifs " between the proximate cause and the injury.